## ZIM'S ADMR. *v.* LAWRENCE'S EXRS.

## ZIM'S ADMR. *v.* SHINKLE.

## LAWRENCE'S EXRS. *v.* KENTUCKY CENT. R. CO.

## SHINKLE *v.* KENTUCKY CENT. R. CO.

[Abstract Kentucky Law Reporter, Vol. 5—604.]

**Transfer of Property to Defraud Creditors.**

    A debtor has no power to dispose of his estate in fraud of his creditors or to compromise with a part of his creditors and hold those who are unwilling to compromise by its terms; but there is no rule of law or equity which will prevent a debtor from disposing of his property in the payment of his debts or of compromising a question of title to property when done in good faith.

**Corporation's Assets Constitute a Trust Fund.**

    The assets of a corporation constitute a trust fund for the payment of creditors and then for stockholders.

### APPEALS FROM KENTON CHANCERY COURT.

January 26, 1884.

OPINION BY JUDGE PRYOR:

The mandate and opinion of this court in the original action of the *Covington & Lex. R. Co. v. Bowler's Heirs,* 9 Bush (Ky.) 468, determined the right of property in favor of the railroad company, allowing it to secure or obtain the possession by paying to Bowler's heirs the liabilities he had assumed and paid for the company by reason of his purchase under the judgment of the Fayette Circuit Court. The mandate was modified to the extent of permitting the infant children of Bowler to make further defense if any could be shown other than had been presented to this court on the first hearing. When the case left this court and returned to the court below the counsel for the railroad and many of its stockholders and creditors thought proper to compromise the litigation, and in that manner obtain not only a speedy settlement of the questions involved but realize from themselves more of the corporate property or its proceeds than they could possibly do by protracting the controversy.

It is evident that a large majority, in fact nearly all of the parties in interest, favored the compromise. The company had no means with which to redeem from Bowler's heirs, and had been prosecuting the action through counsel, whose success determined the amount to be paid for their services, and their only dependence for means to indemnify Bowler was to be derived from the account to be taken between him and the road upon the question of expenditures and profits.

The necessity for and wisdom of the compromise is sustained by the proof, nor do we understand that appellees who have recovered below against Zim's administrator are insisting that the compromise was either fraudulent or invalid, but, on the contrary, that Zim and others, including the new corporation, have misapplied trust funds belonging to the old company that had been set apart by the compromise for the benefit of creditors. It can not well be assumed that the compromise was a consolidation of the old company with the new, or embodied such terms as made the new corporation liable for all the debts of the old company. The franchises, rights, etc., of the old company had been sold under a decree of the Fayette Circuit Court by reason of the insolvency of the corporation, and purchased by Bowler, the purchase-price to be paid leaving unpaid and unsecured a large indebtedness of the company. Bowler, being interested in the old company as director, etc., was held to have purchased for the company, and but for his connections with the corporation would have been vested with a perfect title.

The board of directors of the old company, knowing the pecuniary condition of that corporation, might well have suggested a compromise with Bowler upon any terms that did not evidence bad faith on their part towards the stockholders and others interested. The compromise was made, and, not being assailed, or if attacked the evidence showing that it was executed in good faith and to the interest of all the parties, the rights of the appellants and appellees must be determined by that instrument. A debtor has no power to dispose of his estate in fraud of his creditors or to compromise with a part of his creditors and hold those who are unwilling to compromise bound by its terms. He may, however, when done in good faith, secure a part of his creditors to the exclusion of others, and there is no remedy except for constructive fraud when done in contemplation of insolvency and with a design to prefer. Here

was an insolvent debtor whose right even to the property was liable to be taken from it, by reason of its inability to comply with the mandate of the court divesting the purchaser of title, attempting to secure the creditors, not by way of preference, but to give them such priorities, legal and equitable, as would have existed between them if no such compromise had been made.

By the 7th clause of the contract of compromise the outstanding income bonds of the old company had to be provided for, amounting to $150,000. The new company, the Kentucky Cent. R. Co., that was in fact representing Bowler, the purchaser, and those interested with him, agreed to issue preferred stock to those bondholders dollar for dollar for the face of the bonds, excluding interest, etc. This constituted a part of the consideration for the dismissal of the action by which the old company was divested of title, or rather by which the old company declined to enforce the trust as against Bowler and those associated with him, or comply with the terms of the judgment of this court. All of the income bondholders accepted the terms of the compromise but the two appellees, Shinkle and Hearne, and they were prosecuting their actions on the income bonds held by them against the old company. They obtained judgments and had returns of no property found. If the compromise was rightfully made, and we have already determined that question, there was nothing out of which the appellees could' make their debts but the property belonging to the old company. It had nothing with which to pay these debts but the obligation of the Kentucky Cent. R. Co. contained in § 7 of the contract. This obligation the company complied with by issuing certificates of preferred stock to the bondholders, and the stock was accepted by all but the appellees before the present litigation. The appellees have also accepted it by selling stock, the certificates of which were in their own names to pay their judgments. The Kentucky Cent. R. Co. had issued certificates of stock to the appellees under the 7th section of the contract which they declined to accept, and on the refusal to accept it was deposited in some bank, and at their instance this stock had been sold and the dividends as well as proceeds of sale applied to the satisfaction of their judgments. They ratify so much of the contract as they see proper and reject the balance. They have in this way obtained all the other bondholders

received, and from the weight of the testimony a larger sum than they would likely have received if no settlement had been made.

It is insisted, however, that there is other property held in trust for the creditors of the old corporation that has been misapplied by Zim and others, who had the right to control its appropriation as provided by the compromise. Section 10 of the compromise provided that $1,000,000 of the common stock should be paid to the attorneys, and this seems to have been paid out as required by the terms of the compromise. The attorneys received less than they had contracted to receive, and whether the contract was or was not in issue is not now the subject of inquiry. The result of the litigation shows at least that something was saved to creditors and stockholders. Of the common stock, $100,000 was set apart to pay expenses incurred in keeping up the organization, etc. Other suits were brought with reference to the roads and expenditures incurred that had to be met, and this was regarded as a sort of contingent fund to meet such demands, and doubtless any that had been overlooked. There may be some of this fund left unexpended, and if so it is a trust fund for the benefit of creditors. It can be held in no other manner, but if unexpended there is no reason why the appellees should have their demands satisfied out of it. The preferred or income bonds had been provided for, and there is no rule of equity that would sanction the application of this fund to the payment of the appellees' debts, to the exclusion of the other creditors. If any of the fund not properly expended is on hand it is a trust fund for all the creditors, and should be distributed in that manner. The appellees can not ask the chancellor to give them the benefit of the compromise and then appropriate this trust fund to the payment of their debts to the injury of other creditors. The case should have gone to the commissioner to ascertain who the creditors of the old company were when the compromise was made, the amount of their debts, and also to ascertain how and in what manner the $100,000 had been expended. If expended by the appellant, Zim, at the instance of the board, or for the purpose of the organization, or to satisfy those who had not been provided for and to whom the company was under an obligation to pay them, no liability exists. The fund was left for that purpose, as the contract plainly indicated, and before the case is referred to ascertain the creditors and amounts due them, the chancellor should first deter-

mine the liability of Zim. If not liable a further inquiry would be useless. The answer of Zim or his administrator presents a defense, but there is no satisfactory proof as to the distribution. This proceeding was instituted under the old code of practice and no reply to the answer was necessary.

The appellees in the case of Zim, are appellants as against the Kentucky Cent. R. Co. We see no reason for interfering with the judgment on this branch of the case. The railroad company seems to have complied fully with its part of the contract, and if the funds directed to be paid over to the old company, or to its directors, had been misapplied we can not well see why the railroad company should be made responsible. Both the letter and the spirit of the contract have been strictly executed by the new company, and if liable at all for these bonds it must proceed upon the idea that it became liable for the entire indebtedness of the old company by reason of the compromise. It would be unreasonable to adjudge that such was the purpose or legal effect of the contract. That a corporation known to be insolvent, and whose rights and franchises had been sold by reason of its insolvency, compromises a doubtful title with those who purchased its franchises, and obtains more for its creditors and stockholders than the old corporation could pay, affords no reason in law or equity for holding the purchaser responsible for the debts of the insolvent corporation. It has issued and delivered its stock to the parties entitled and has not issued or transferred stock to any but those who were entitled. If the directors of the old company by the consent of the stockholders had the right to make the compromise, then it is binding on all the parties, whether stockholders or creditors, unless fraudulent, in so far as the Kentucky Cent. R. Co. is concerned. It could not affect the lien of a creditor upon the corporate property, but we know of no rule of law or equity preventing the debtor from disposing of his property in the payment of his debts, or of compromising a question of title to property when done in good faith.

That the assets of a corporation constitute a trust fund for the payment of creditors and then for stockholders is a doctrine well understood; and we have no doubt that under a proper state of case where stock has been taken for the property rights of a corporation or the franchise under a sale or transfer it may be reached by the creditors. In this case the stockholders are not parties, but Zim,

the president of the old company, and the new company (the Kentucky Cent. R. Co.), are sought to be made liable for issuing this stock to those who it is insisted were not entitled to it until the debts were paid, upon the idea that they held the stock in trust, or their relation to the parties made it their duty to see that the creditors were paid. In the first place we see no reason for making Zim individually liable for the stock or its value issued to the original stockholders, as he acted in good faith and with a view of protecting the interests of all the parties concerned.

It appears, or is at least to be inferred, that these appellees who were creditors were not willing to aid in the prosecution of the original action, and that without assistance in a pecuniary point of view, and incurring a liability involving many thousands of dollars, the possession of the road could not be obtained by the old corporation, and it became necessary in effect to surrender the road to Bowler or assume this responsibility. The compromise was then entered into by which all parties interested were to some extent provided for. The creditors of the old company and the stockholders all made sacrifices (but these appellees) to bring about the settlement. The claims of creditors were reduced by deducting the interest and coupons on the income bonds; and by a mutual loss to all except these appellees, the compromise was effected.

The plaintiffs below insist, and this is the gravamen of their complaint, that the stockholders in the old company were to some extent provided for. They obtained a certain amount of stock in the Kentucky Cent. R. Co. worth twenty cents on the dollar, which appellees maintain should be applied to the debts due by the old corporation. The appellees may not be compelled to accept the compromise, but when they repudiate it all that they can ask upon any recognized rule of equity or justice is to be placed where they were before the compromise was made. What proportion of their claims would have been collected if this agreement was out of the record, and the road with all its appurtenances sold at the time to pay debts? What was or would have been the value of their claims, with a director or stockholder unable to comply with the judgment in this case by assuming the demands due Bowler in order to get possession of the road? In an equitable distribution of the assets, or even in such a distribution under the compromise, all of the creditors being allowed a pro rata on the full amount of their claims, the ap-

pellees would not be entitled to as much as they received. The loss of the other creditors does not inure to the benefit of appellees. They must take the compromise or reject it. When rejecting it an equitable distribution would necessarily be made without regard to its terms. The appellees are attempting to get all the other creditors obtained by seizing hold of what the compromise gave them, and then to make the entire balance of their debt by having a distribution based upon the compromise agreement; or they have gone farther and obtained a judgment to be satisfied out of a trust fund belonging to the old company by which their entire debt is satisfied and the rights of other creditors disregarded. If creditors have acceded to the compromise that stockholders may have something, the unwilling creditors are entitled to a distribution as if no compromise had been made, and in the attempt to do this, it appearing that they have received under the compromise more than they would have received if the agreement had not been entered into, they are without remedy even against the stockholders, and if any of the trust fund in Zim's hands is left undisposed of all the creditors have the equitable right to share in the distribution.

The judgment is therefore *affirmed* as to the Kentucky Cent. R. Co. on the appeals of Shinkle and Lawrence's executor, and *reversed* on the appeals of *Zim's Admr. v. Shinkle,* and *Zim's Admr. v. Lawrence's Exr.,* and remanded for proceedings consistent with this opinion.

As the record now stands the only inquiry to be made on the return of the case is as to the propriety of the retention by Zim of a part of the $100,000 for his own use, the amount paid to Greer and the others specially named. If when referred to the commissioner it appears that there has been a misappropriation, or that a part of this fund remains in his hands, all the creditors must be brought before the court that they may share in the distribution.

*J. F. & C. H. Fisk, Wm. Ramsey, for Zim's administrator.*

*W. H. Mackey, for Lawrence's Executor and Shinkle.*

*O'Hara & Bryan, for Kentucky Cent. R. Co.*